ORIGINAL

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

Sheryl Reddick, Pro Se,
    Plaintiff,

v.

David Steiner,

Postmaster General,

United States Postal Service

(Field Areas and Regions),

Agency.
    Defendant.

-------------------------------------------------------------X

**Case No.**

**COMPLAINT FOR DAMAGES**

**JURY TRIAL DEMAND**

## PRELIMINARY STATEMENT

Pro Se Plaintiff, Sheryl Reddick ("Plaintiff") brings this action under Title VII and to redress United States Postmaster General, David Steiner and the United States Postal Service, unlawful denial of religious accommodation — including longstanding schedule and overtime/shift-swap accommodations — resulting in adverse changes to Plaintiff's seniority status, overtime eligibility, and other terms and conditions of employment, solely because of Plaintiff's religion. For many years, Defendants accommodated Plaintiff's sincerely-held religious practice; without warning or legitimate business justification, Defendants abruptly revoked that accommodation — triggering substantial adverse employment consequences.

REC'D IN PRO SE OFFICE
DEC 8 '25 AM 10:55

1

## I. PARTIES

1.     Plaintiff, Peo Se of is a former employee of USPS, as a Motor Vehicle Operator employed from June 2008 through March 2024, retired.

2.     Defendants of USPS is (and was) an employer subject to the protections of Title VII of the Civil Rights Act of 1964, as amended, 42.U.S.C. § 2000e et. Seq.

## II. JURISDICTION AND VENUE

3.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

4.     Venue is proper in this District because the unlawful employment practices took place where Plaintiff was employed.

## III. APPLICABLE LAW

5.     Under Title VII of the Civil Rights Act 1964, protected characteristics are race, color, religion, sex (including pregnancy, sexual orientation, and gender identity) and national origin., makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment.

## IV. FACTUAL ALLEGATIONS

6.     Ms. Sheryl Reddick began working for USPS as a Motor Vehicle Operator in approximately June 2008.

7.     From 2008 until 2020, Ms. Reddick informed USPS of her sincerely held religious belief/practice requiring attendance at religious meetings on Thursdays.

8.     USPS consistently accommodated this request by permitting schedule adjustments, shift-swaps, no out of scheduled overtime eligibility, and other modifications enabling Plaintiff to attend her religious meetings, on Thursday evenings.

2

9. Ms. Reddick was performing her duties as a Motor Vehicle Operator satisfactorily; has received several safety certificates and many award pins over the years.

10. Ms. Reddick had accumulated annual and sick leave based on her not having excessive absence over the years.

11. Ms. Reddick has received several certificates and pins for safety, she has trained new drivers in pre-inspection of trucks, in safety driving, and mandatory paperwork.

12. Mr. Ian Sandy became Ms. Reddick's supervisor in or around 2011 and had supervisory authority over Plaintiff.

13. Mr. Ian Sandy granted her religious swap accommodation in or around 2011, until he became manager.

14. Mr. Sandy knew — or should have known — of Ms. Reddick's religious practice and need for accommodation, through repeated requests and long-standing accommodation from signed Form 3189.

15. Ms. Erika Edney knew — or should have known — of Ms. Reddick's religious practice and need for accommodation, through repeated requests and long-standing accommodation.

16. The form 3189 was filled out for one month at a time, from on or about 2011 until March 2020.

17. Ms. Erika Edney became Ms. Reddick's supervisor from 2016 until January 2021.

3

18.   Ms. Edney knew — or should have known — of Ms. Reddick's religious practice and need for accommodation, through repeated requests and long-standing accommodation.

19.   Ms. Reddick verbally notified Ms. Edney that she was one of Jehovah's Witnesses and that she had a religious accommodation shift swap, that was already effect.

20.   Ms. Reddick continued to use the Request for Temporary Schedule Change for Personal Convenience Forms 3189, for one month at a time, for Thursdays only, on or after from 2011 onward until denied in March 2020.

21.   Ms. Edney signed Form 3189 from 2016 until March 2020.

22.   From 2011 until March 3, 2020, Form 3189 was signed and was approved by Ms. Reddick, supervisor/management, and some of the union.

23.   There were no other forms used or asked for this religious swap accommodation, on Thursday evenings.

24.   Ms. Edney signed Ms. Reddick religious accommodation swap used Request for Temporary Schedule Change for Personal Convenience Forms 3189, for one month at a time, from 2016 until on or about March 2020.

25.   Ms. Edney acknowledges that Ms. Reddick worships on Thursday evenings, with signed Form 3189.

26.   All regular Motor Vehicle Operators/Tractor Trailer Operators have the privilege of earned seniority.  With earned seniority, it grants for first picks on block and runs, pick on vacation weeks, and overtime order list.

4

27. All regular Motor Vehicle Operators, on the desired overtime list, are required to work overtime, if/when necessary, only with supervisor or management approval.

28. Earned seniority bidding is a privilege, terms, and conditions of employment, at USPS Brooklyn, P&DC Facility, Transportation.

29. The seniority bids process is agreed upon by the union and management.

30. Seniority Bidding occur yearly, or can be longer, according to management and the union.

31. Two weeks before the New Seniority Bids begin, the new Block and Run Book, with new assignments, is placed in the office.

32. All regular Vehicle Operators/Tractor Trailer Operators should peruse the book for their preferred earned seniority bid for two weeks before the Seniority bids begin.

33. The Seniority Preferred Assignments Bids are block and runs, or assignments/bids based on Tour, Begin and End Time, non-schedule days off.

34. The Block and Runs contain destinations of varies routes of travel and locations, such as Brooklyn, Queens, Manhattan, Bronx, Long Island, Staten Island, and New Jersey, with departure and arrival times.

35. All regular Motor Vehicle Operators are restricted to only 15 minutes to select a preferred seniority bid.

36. Ms. Edney alleges she gave Ms. Reddick 25 minutes.

37. The restriction of 15 minutes is to expedite time and selection, and 15 minutes is agreed upon by management and the union prior seniority bidding.

5

38.    The day of the seniority bid, all regular Motor Vehicle Operators/Tractor Trailer Operator, have an allotted day and time to report in person, or telephone in their seniority bid.

39.    The block and run that the regular senior Motor Vehicle Operator/Tractor Trailer Operator selects, is called Seniority for Preferred Assignments.

40.    The selected bid is available, then it signed by the senior Motor Vehicle Operator/Tractor Trailer Operator, by someone from the union, the supervisor or management, dated, and removed to indicate it is no longer available.

41.    The Block and Run Book have possibly hundreds of block and runs available for Motor Vehicle Operators and Tractor Trailer Operator based to bid based on earned seniority.

42.    The Brooklyn Plant and Distribution Center of transportation facility has 3 tours, and it is a 24/7 operation.

43.    The Brooklyn Plant and Distribution Center Facility is a large transportation operation, with its own building separate from the main building.

44.    Mrs. Reddick became a regular Motor Vehicle Operator on or about 2010, she would only bid on Tour 2, for approximately 10 consecutive years, with the religious accommodation swap Form 3189.

45.    On or about February 18, 2020, the New Seniority Bids Book was placed in the office.

46.    During that period, USPS's operations continued without any record of undue hardship; no complaints, no documented negative impact on efficiency or staffing, and no

indication that accommodating Ms. Reddick caused any burden that USPS believed to be undue.

47. On Tuesday, March 3, 2020, at 2:30, Ms. Reddick's was #27.

48. Ms. Reddick reported in person, at 2:30 p.m.

49. Inside the office were Ms. Edney, supervisor, overseeing the seniority bidding process, Andrew S., supervisor, Lou S., Motor Vehicle Craft Director, Angie A., Assistant and Ms. Reddick.

50. Ms. Reddick immediately selected Block and Run 231, beginning time 11:45 a.m. with end time 8:15 p.m., Saturday and Sunday as non-scheduled on Tour 2, as her earned seniority preferred bid.

51. Ms. Reddick solely bid on earned seniority, with the mindset that the religious accommodation swap would be in effect as approximately 10 past years.

52. Ms. Edney suddenly asked Ms. Reddick "to step outside in the hallway."

53. Ms. Edney also asked Mr. Andrew S., Supervisor, Mr. Louis S., Motor Vehicle Operator Craft Director, to come out in the hallway.

54. Ms. Edney suddenly tells Ms. Reddick that her religious accommodation swap is denied, effective March 28, 2020. Adverse treatment.

55. Ms. Reddick was shocked and confused.

56. Ms. Reddick said to Ms. Edney, "why didn't you give any advance notice that religious accommodation was being denied?" Adverse treatment.

57. Ms. Edney's response was, "all I had to do was to tell you at your bid time." Adverse treatment. Adverse treatment.

58. Ms. Reddick reminded Ms. Edney that "the religious accommodation swap hours were to attend worship meetings on Thursday evenings." Adverse treatment.

59. Ms. Edney again said to Ms. Reddick, the accommodation swap will stop effective March 28, 2020, when the new bids become effective.

60. Ms. Edney, denying the religious swap accommodation, then change in the terms, conditions, and privilege of employment. Adverse treatment.

61. Ms. Reddick said to Ms. Edney, you are making me choose between "work and worship." Conflict between work and worship.

62. Ms. Edney said that Ms. Reddick Plaintiff, said "between "work and money."

63. Neither Ms. Edney nor Mr. Sandy give Ms. Reddick a verbal or written notice that her swap accommodation was going to be denied on March 28, 2020.

64. Ms. Reddick's sincerely held belief is that meetings are a must.

65. Ms. Reddick is head of household also needs to work.

66. Ms. Edney, denying the religious swap accommodation, also denied Ms. Reddick's earned seniority bid Block and Run 231 non-scheduled Saturday/Sunday. Ms. Reddick's seniority bid was nullified. Adverse treatment.

67. Ms. Edney, denying the religious swap accommodation, also would deny Ms. Reddick's earned annual sick and vacation leave, to attend worship. Adverse treatment.

68. Ms. Edney, denying the religious swap accommodation, also would lead to verbal warnings then written warnings, and finally termination, for being absent without leave, to attend worship.

69.    Ms. Edney Supervisor denying the religious swap accommodation, also denied the "opportunity" for the 8-hours of overtime on her non-schedule day.

70.    Ms. Reddick verbally complained to supervisor Ms. Edney, "why didn't you tell me two weeks ago, that religious swap accommodation was going to be denied, when the new Block and Run Bid book were in the office?"

71.    Supervisor Ms. Edney, "said there are two block and runs with Thursday as non-scheduled, I seriously suggest you consider one of them." Adverse treatment

72.    Ms. Reddick said to Ms. Edney, "this can't be right, to suddenly deny a religious swap accommodation that had been in effect for years?" Adverse treatment.

73.    Ms. Reddick asked Supervisor Ms. Edney "" Mr. Sandy was aware of this religious accommodation swap being denied?

74.    Supervisor Ms. Edney said that she had communicated with Manager Mr. Sandy.  Ms. Reddick is at times under their authority.

75.    Ms. Reddick said to Supervisor Ms. Edney that she needed to discuss the religious swap accommodation denial and the seniority earned bid with Mr. Sandy.

76.    Ms. Reddick met with manager Mr. Sandy on or about March 16, 2020, to find out why her religious swap accommodation was denied, and earned seniority was taken from her.  Adverse treatment.

77.    Manger Mr. Sandy agreed with Supervisor Edney in denying the swap religious accommodation. Adverse treatment.

78.    Manager Mr. Sandy said to Ms. Reddick, "to do what she had to do or file a grievance."

9

79.   Ms. Reddick did not file a grievance with the union.

80.   Plaintiff filed an EEOC complaint on or about April 16, 2020.

81.   Ms. Edney said she gave Plaintiff an additional 10 minutes to bid. Adverse treatment.

82.   All other regular Motor Vehicle Operators/Tractor Trailer Operators were given 20,160 minutes or 2 weeks to bid.  Adverse treatment.

83.   Ms. Reddick was under duress having to choose between work and worship, in a matter of minutes. Adverse treatment.

84.   Ms. Reddick said to supervisor Edney, "You informed me while making an earned seniority bid?" Adverse treatment.

85.   Supervisor Ms. Edney told Ms. Reddick, Andrew Salvotore, Louis Sessa, to go back inside the office.

86.   Ms. Reddick said, once back inside the office, there was chaos.

87.    Mr. Louis Sessa., Craft Director was talking to Ms. Reddick, "can you switch your meeting to another night?"

88.   Ms. Reddick said to the Mr. Sessa, Craft Director, "no, Ms. Edney is denying the religious accommodation, it doesn't matter what night my meeting is on."

89.   Supervisor Ms. Edney showed Reddick two Block and Runs to select from with Thursday as non-schedule day.  Adverse treatment.

90.   Supervisor Ms. Edney showed Ms. Reddick two Block and Runs with Thursday as non-scheduled days.

91. Ms. Edney showed Ms. Reddick one Block UT13 with Thursday and Saturday. Adverse treatment.

92. Ms. Edney showed Ms. Reddick one Block and Run 200, the non-scheduled days, Thursday and Sunday. Adverse treatment.

93. Ms. Reddick asked supervisor Ms. Edney "what would happen if Plaintiff didn't bid?"

94. Supervisor Ms. Edney said, "then you would be a floater, and could be put on any tour or time, why would you want to do that?" Adverse treatment.

95. Supervisor Ms. Edney had Ms. Angie A., Assistant, in the office counting down the minutes, while Ms. Reddick was trying to think and bid on one of the two bids, while under duress. Adverse treatment.

96. Ms. Reddick had never experienced earned seniority bids like this one, in all her years of doing seniority bids.

97. Supervisor Ms. Edney pressured Ms. Reddick to bid on a block and run to attend her religious meetings on Thursday evenings.

98. Ms. Reddick couldn't bid on earned seniority, as in previous years, but on the need to worship. Adverse treatment.

99. Ms. Reddick was under pressure wrote on the Block and Run 200 demonstrating her disapproval. Adverse treatment.

100. Ms. Reddick wrote on Block and Run 200 demonstrating her disapproval, "I had no choice but to but to pick one Run 200, because of religious reason. I was swopping my hours on Thursday, but I was just informed now during bidding time." Adverse treatment.

11

101.  Block and Run 200 near the bottom there are three initials: Ms. Reddick's, Mr. Louis Sessa Craft Director's and Ms. Edney's.

102.  A Motor Vehicle Operator, with less seniority than Ms. Reddick was able to bid on Block and Run 231 Saturday and Sunday as non-scheduled.

103.  #42 Adel Morris with less seniority than was able to bid on Ms. Reddick's original earned bid Block and Run 231 non-schedule Saturday and Sunday. Adverse treatment.

104. Adel Morris was in the office, for approximately 2 years, while holding down her Motor Vehicle Operator bid, Saturday and Sunday, non-schedule. Adverse treatment.

105.  Supervisor Ms. Edney, in March 2020, would have covered Adel Morris #42, Block and Run 231, Saturday and Sunday non-scheduled for 5 days a week for approximately one year because Ms. Morris was in the office.  Adverse treatment.

106.  Supervisor Ms. Edney, in 2019, covered Ms. Adel Morris Block and Run for 5 days a week, for one year because she was working in the office.

107.  As a result of the revocation coinciding with the seniority-bidding process, Ms. Reddick was forced to choose between limited, less desirable junior-employee options. Adverse treatment.

108.  Ms. Reddick was pressured by supervisor Ms. Edney and would not have chosen had her religious accommodation remained. This resulted in demotion in terms of seniority privileges.  Adverse treatment.

12

109. Ms. Reddick had equal employment opportunities with the religious swap accommodation for years, to work and worship, never missing a religious meeting because of work.

110. When Ms. Edney stopped the religious swap accommodation effective March 28, 2020, Ms. Reddick did not have equal employment opportunities.

111. When Ms. Edney stopped the religious accommodation, Ms. Reddick lost earned seniority, possible 8-hour overtime, earned vacation picks, and earned tour.

112. Ms. Reddick lost access to previously available non-scheduled overtime "opportunity", if and when needed by management, shift-swap privileges, and other seniority-based benefits. Adverse treatment.

113. All regular Motor Vehicle Operators, on the desired overtime list, are required to work overtime when necessary, and can only do so, with supervisor or management approval.

114. There are two different block and runs that are referred to in this complaint. Block and Run 203, has rotating non-schedule days., example, Sunday is always off, then one week Sunday/Monday, next week Sunday/Tuesday, next week Sunday/Wednesday, etc.

115. Block and Run 200, non-schedule days are Sunday and Thursday, permanently split.

116. On the Overtime Desired List, there are two ways of getting overtime as a Motor Vehicle Operator/Tractor Trailer Operator, when needed.

117. Before, regular tour overtime and after, tour overtime.

118.  A regular Motor Vehicle Operator/Tractor Trailer Operator working on a non-schedule day, is 8-hour guaranteed overtime.

119.  Plaintiff claims Tour 2 hours, usually beginning at or around 11:00 a.m. until 7:30 p.m.

120.  Ms. Reddick's religious accommodation swap was for hours change, only on Thursdays.

121.  Block and Run 203, Ms. Reddick worked on Thursdays, from 5:00 a.m. until 1:30 p.m. Thursdays only, with approved form 3189 swap, to attend religious meetings on Thursday evenings.

122.  The supervisors on Tour 1 would give Ms. Reddick assignments from 5:00 a.m. until 1:30 p.m. on Thursdays.

123.  Supervisors on Tour 1 would sometimes leave last two hours, for Ms. Edney to use Ms. Reddick for coverage on Tour 2.

124.  With the religious accommodation swap hours change, no payment of out-of-schedule premium for hours worked outside of or instead of her regular tour, on Thursdays only.

125.  Ms. Reddick with Block and Run 203, with the religious swap accommodation, the equal "opportunity" for the guarantee of 8-hours, was available because the non-schedule days would rotate.

126.  Block and Run 203, rotating non-scheduled day, when rotation fell on Thursday, Ms. Reddick would not work because there is no overtime with a swap.

14

127. Ms. Reddick said that with Block and Run 203, rotating non-schedule days, not having the "opportunity" for overtime or the guaranteed 8-hour of overtime for one day, out of a month, was not a problem.

128. Ms. Reddick said that with Block and Run 203, when her non-schedule day fell on any other day, such as Sunday/ Monday, Sunday/Tuesday, Sunday/Wednesday, etc., she had the "opportunity" for the guaranteed 8-hours of overtime, like others Motor Vehicle Operators.

129. Ms. Reddick said Block and Run 203 she had the opportunity to 8-hour guarantee overtime, except when her non-schedule day fell on Thursday.

130. Ms. Edney's pressured Block and Run 200, "strongly suggested" the non-schedule Sunday and Thursday, are set permanently, begin time 10:30 a.m. end time 7:00 p.m. the "opportunity" for the guarantee 8-hour, was no longer available. Adverse treatment.

131. Ms. Edney's pressured Block and Run 200, "strongly suggested" the non-schedule Sunday and Thursday for her, because her religious meetings were on Thursday evenings at 7:00 p.m. Conflict between work and worship. Adverse treatment.

132. Ms. Edney's pressured Block and Run 200 "strongly suggested non-schedule Sunday and Thursday, to have the "opportunity" for the guaranteed 8-hours of overtime, on her non-scheduled day Thursday, she would have to work and not attend her religious meeting. Conflict between work and worship. Adverse treatment.

133. Ms. Edney's pressured Block and Run 200 "strongly suggested" with set permanently, non-schedule Sunday and Thursday, not to have any "opportunity" for the 8-

hour guaranteed on any non-scheduled day, is not equal "opportunity", an unreasonable. Adverse treatment.

134. Ms. Edney's pressured Plaintiff while engaging in a seniority bid, to bid on Block and Run 200, Sunday and Thursday, began at 10:30 a.m. and ended at 7:00 p.m. Adverse treatment.

135. Regular Motor Vehicle Operators/Tractor Trailer Operators, who didn't need religious accommodation had the "opportunity" to get the 8-guaranteed overtime on their non-schedule day off. Adverse treatment.

136. Regular Motor Vehicle Operators/Tractor Trailer Operators, who didn't need a religious accommodation swap could bid on freely, and select their seniority earned block and run, without being pressured by Ms. Edney. Adverse treatment.

137. The "opportunity" for the 8-hours of overtime was available on all her previous block and runs on or about 2011 onward until March 2020, like all the other Motor Vehicle Operators.

138. The pressured Block and Run 200, not to have any "opportunity" for the 8-hour guaranteed for months or perhaps years, is not reasonable. Adverse treatment.

139. Supervisor Ms. Edney pressured Ms. Reddick to bid Block and Run 200. Adverse treatment.

140. On March 3, 2020, Supervisor Ms. Edney pressured Ms. Reddick to an inferior bid during earned seniority bid. Adverse treatment.

16

141. Regular Motor Vehicle Operators who didn't need religious swap accommodation had the "opportunity" work the 8-guaranteed overtime on their non-scheduled ay off. Adverse treatment.

142. Regular Motor Vehicle Operators/Tractor Trailer Operators who didn't need religious accommodation could select their seniority earned block and run freely without pressure. Adverse treatment.

143. Ms. Reddick did not voluntarily abandon her religious practices; the change was imposed unilaterally by USPS.

144. USPS has not — and cannot — demonstrate that accommodating Ms. Reddick religious practice would impose a "substantial increased cost" or other legitimate undue hardship, given the decades-long accommodation without issue and given the size and resources of USPS.

145. The revocation of accommodation and resulting adverse employment consequences were based solely on Ms. Reddick's religion.

## V. CLAIMS FOR RELIEF

146. Plaintiff realleges and incorporates by reference the foregoing paragraphs.

147. By revoking Plaintiff's long-standing religious accommodation without legitimate justification or undue hardship — and thereby denying schedule adjustments, shift swaps, non-scheduled overtime, and other accommodations — Defendants failed to reasonably accommodate Plaintiff sincerely held religious beliefs/practices, in violation of Title VII.

148. By revoking the accommodation and altering Plaintiff's seniority, overtime/shift-swap privileges, and work schedule, Defendants engaged in disparate treatment based on religion — denying or impairing terms, conditions, and privileges of Plaintiff's employment because of religion — in violation of Title VII.

149. The adverse employment actions caused Plaintiff to suffer loss of wages, loss of overtime and benefits, loss of seniority privileges, and emotional distress, for which Plaintiff seeks relief.

## VI. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Declare that Defendants actions violated Title VII.

b. Order Defendants to reinstate Plaintiff to her position and provide reasonable religious accommodation — including schedule adjustments, shift-swaps, overtime / non-scheduled overtime / shift-swap privileges, or other effective accommodation. If the Plaintiff so desires, to reinstate her to the ranking number, position and pay scale, to make her whole. Order comparable accommodation allowing Plaintiff to observe her religious meetings.

c. Award compensatory damages for lost wages, lost overtime, lost benefits, lost seniority privileges, and emotional distress.

d. Award interest, costs, and reasonable attorney fees;

e. Award any further relief the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated:  Brooklyn, New York
        December 5. 2025

                              SHERYL REDDICK, Pro Se


By: _Sheryl Reddick_
                              91 Boerum Street
                              Brooklyn, NY 11206



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Sheryl E. Reddick a/k/a
Sana I,[1]
Complainant,

v.

David Steiner,
Postmaster General,
United States Postal Service
(Field Areas and Regions),
Agency.

Appeal No. 2023004823

Hearing No. 520-2021-00087X

Agency No. 1B-112-0012-20

DECISION

Complainant filed an appeal, pursuant to 29 C.F.R. § 1614.403, from the Agency's July 26, 2023, final order concerning an equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq.  For the reasons that follow, we AFFIRM the Agency's final order.

During the relevant time, Complainant was employed by the Agency as a Motor Vehicle Operator (MVO) at the Agency's Processing and Distribution Center facility in Brooklyn, New York.

Prior to March 28, 2020, Complainant worked a schedule with Sundays as her regularly scheduled day off in addition to a rotating day off.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2                                    2023004823

Complainant was also permitted a "religious swap" on Thursdays where instead of working her regular Tour 2 duty hours, Complainant would work an earlier morning to afternoon shift so that she could attend Thursday evening religious meetings. On March 3, 2020, Complainant's supervisor advised Complainant that the religious swap would be discontinued. Complainant's supervisor recommended Complainant select a bid with Thursdays as one of the scheduled days off so that she could attend her religious meeting on that day. Complainant was given twenty minutes of extra time to make her selection and ultimately chose a Tour 1 bid (DX200) with Thursdays and Sundays as her regularly scheduled days off. Complainant complained to her manager, however, that the supervisor was forcing her to make a bid under duress but her manager concurred with the discontinuation of the religious swap.

On June 30, 2020, Complainant filed an EEO complaint alleging discrimination by the Agency on the bases of religion (Jehovah's Witness) and in reprisal for prior protected EEO activity when:

1. On March 3, 2020, management discontinued her established religious accommodations; and

2. On dates to be specified since March 3, 2020, Complainant has not been allowed to work the eight hours of overtime on her NS (non-scheduled) day.

After its investigation, the Agency provided Complainant with a copy of the report of investigation and notice of right to request a hearing before an Equal Employment Opportunity Commission (EEOC or Commission) Administrative Judge (AJ). Complainant timely requested a hearing. The AJ initially issued summary judgement in favor of the Agency. Complainant appealed. In EEOC Appeal No. 2022003593, we reversed the AJ's summary judgment decision and remanded the matter for a hearing. Thereafter, the AJ assigned to the case held a hearing and subsequently issued a decision in favor of the Agency.

The Agency issued its final order adopting the AJ's post-hearing conclusion that Complainant failed to prove discrimination as alleged. The instant appeal followed.

On appeal, Complainant, among other things, argues that management wrongfully discontinued the work schedule she which she had been permitted as an established and effective religious accommodation for ten years prior to March 28, 2020.

Complainant contended that management coerced her into taking DX200 that she found less desirable.  According to Complainant, DX200 reduced her opportunity for overtime.

The Agency, in pertinent part, argued that its final order should be affirmed.

Pursuant to 29 C.F.R. § 1614.405(a), all post-hearing factual findings by an AJ will be upheld if supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (internal citation omitted).  A finding regarding whether or not discriminatory intent existed is a factual finding.  See EEOC Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), Chapter 9, at § VI.B. (Aug. 5, 2015).  An AJ's conclusions of law are subject to a de novo standard of review, whether or not a hearing was held. Id. An AJ's credibility determination based on the demeanor of a witness or on the tone of voice of a witness will be accepted unless documents or other objective evidence so contradicts the testimony, or the testimony so lacks in credibility that a reasonable fact finder would not credit it.  Id.

EEO-MD-110, Chap. 9 § VI.C, further provides that on appeal to the Commission, the burden is squarely on the party challenging the AJ's decision to demonstrate that the AJ's factual determinations are not supported by substantial evidence.  See id.  In this case, this means that Complainant has the burden of pointing out where and why the AJ's findings are not supported by substantial evidence. Cf. id. (pointing out that "[t]he appeals statements of the parties, both supporting and opposing the [AJ's] decision, are vital in focusing the inquiry on appeal so that it can be determined whether the [AJ's] factual determinations are supported by substantial evidence").

Regarding Claim 1, Complainant testified that she had not missed a single Thursday evening religious meeting under her current DX200 schedule.  We therefore find, as did the AJ, that the Agency effectively accommodated Complainant's religion.  We further find the religious swap had burdened management with having to arrange for and pay overtime or double-time to other MVOs in order to cover for Complainant's early departure on Thursdays.

Regarding Claim 2, we concur with the AJ in that Complainant failed to evidence that she had lost out on overtime opportunities because of working the DX200 schedule.  To the contrary, the record showed that Complainant earned more overtime while working DX200 than she did working the religious swap schedule.

4                                                          2023004823

Upon careful review of the AJ's decision and the evidence of record, as well as the parties' arguments on appeal, we conclude that substantial evidence of record supports the AJ's determination that Complainant has not proven discrimination by the Agency as alleged.

We AFFIRM the Agency's final order implementing the AJ's decision.

<u>STATEMENT OF RIGHTS - ON APPEAL</u>

<u>RECONSIDERATION</u> (M0425)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1.  The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.  The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision.  If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**.  A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. <u>See</u> 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit their request for reconsideration, and any statement or brief in support of their request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx. Alternatively, Complainant can submit their request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507.  In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. <u>See</u> 29 C.F.R. § 1614.604.

5                                    2023004823

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). <u>See</u> 29 C.F.R. § 1614.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files their request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. **Any supporting documentation must be submitted together with the request for reconsideration.** The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. <u>See</u> 29 C.F.R. § 1614.604(f).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0124)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by their full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests.

6                                                2023004823

Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).


FOR THE COMMISSION:


_Gul Chaudhry_
Gul Chaudhry, Acting Director
Office of Federal Operations


September 8, 2025
Date

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

Sheryl Reddick Pro Se

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

David Steiner, Postmaster General, USPS

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for Employment Discrimination**

Case No. _____
*(to be filled in by the Clerk's Office)*

Jury Trial:  ☑ Yes  ☐ No
*(check one)*

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name                  Sheryl Reddick
Street Address        91 Boerum St, Apt. 12J
City and County       Brooklyn, NY
State and Zip Code     11206
Telephone Number      917-607-149
E-mail Address        sreddick30@gmail.com

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

Name                  David Steiner
Job or Title          Postmaster General, USO
(if known)
Street Address        475 L'Enfant
City and County       Washington, DC
State and Zip Code    Washington, DC 20260
Telephone Number      800-275-8777
E-mail Address
(if known)

Defendant No. 2

Name
Job or Title
(if known)
Street Address
City and County

2

State and Zip Code     _____

Telephone Number     _____

E-mail Address     _____

(if known)

C.     **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

Name     USPS

Street Address     1050 Forbell Street

City and County     Brooklyn, Kings

State and Zip Code     New York, 11256

Telephone Number     718-348-3373

II.     **Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

     ☑    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

           *(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

     ☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

           *(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

     ☐    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

           *(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

3

☑ Other federal law *(specify the federal law):*
      Title VII

☐ Relevant state law *(specify, if known):*

☐ Relevant city or county law *(specify, if known):*

III.    **Statement of Claim**

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.  *SEE*

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

      ☐    Failure to hire me.
      ☐    Termination of my employment.
      ☐    Failure to promote me.
      ☐    Failure to accommodate my disability.
      ☑    Unequal terms and conditions of my employment.
      ☐    Retaliation.
      ☐    Other acts *(specify):* Denial of religious accommodation overtime
      *(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)
      March 3, 2020

4

C.  I believe that defendant(s) *(check one)*:

    ☐    is/are still committing these acts against me.

    ☐    is/are not still committing these acts against me.

D.  Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

    ☐    race _____

    ☐    color_____

    ☐    gender/sex _____

    ☑    religion _____

    ☐    national origin _____

    ☐    age. My year of birth is _____. *(Give your year of birth only if you are asserting a claim of age discrimination.)*

    ☐    disability or perceived disability *(specify disability)*

    _____

E.  The facts of my case are as follows. Attach additional pages if needed.

    SEE Attached

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

_____

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☑    issued a Notice of Right to Sue letter, which I received on *(date)*

_____September 8, 2025_____.

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☑    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attached _____

_____

_____

_____

_____

_____

6

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 12/05 , 2025

Signature of Plaintiff   _Sheryl Reddick_

Printed Name of Plaintiff   _Sheryl Reddick_

7